## A07A1417. COTTRELL v. THE STATE.
(651 SE2d 444)

JOHNSON, Presiding Judge.

A Clayton County jury found William M. Cottrell guilty of driving under the influence and making an improper turn at an intersection. On appeal, Cottrell claims that the trial court erred in denying his motion to suppress the blood test evidence because the state failed to provide the full information he requested to show that the interferents reported in his breath test did not affect his blood test. Cottrell also claims that the trial court erred in failing to suppress the blood test results because he never had the opportunity to confront one of the testers. We disagree and affirm.

Evidence adduced at the motion hearing and at trial shows that on October 9, 2005, a Clayton County police officer was dispatched to the scene of an accident. He spoke to the driver, Cottrell, who explained that he was making a turn when his brakes locked up, causing the car to skid across the pavement and hit the curb. The officer noticed that Cottrell had red, glassy eyes and that his breath smelled strongly of alcoholic beverages. Cottrell admitted to drinking four twelve-ounce Budweiser beers and two mixed drinks within the past two and a half hours. After Cottrell submitted to a field sobriety test, the officer concluded that Cottrell was less safe to drive and placed him under arrest for DUI.

The officer then read the implied consent notice to Cottrell, who agreed to a breath test. The three attempts at obtaining a reading from the Intoxilyzer 5000 were unsuccessful. The first and third samples were shown to be invalid because an interferent was detected. According to the officer, the second sample was invalid because Cottrell failed to blow properly into the machine.

Cottrell then agreed to a blood test. His blood sample was mailed to the Georgia Bureau of Investigation. A toxicologist employed by the Forensic Sciences Division analyzed the blood using a gas chromatography instrument. He reported a test result of 0.139 grams, plus or minus 0.005 grams, per hundred milliliters.

1. Cottrell filed an amended motion to suppress/motion in limine in which, among other things, he requested that numerous items be

produced by the state.[1] At the motion hearing, the issues were narrowed to Cottrell's request for production of "full information" from the state under OCGA § 40-6-392 (a) (4). The trial court denied the request for information as it related to the Intoxilyzer 5000 breath test. The trial court ruled that as to the blood test only those things conceded by the state to be within the full information request, including any notes, memoranda, graphs, or computer printouts pertaining to the test of Cottrell's blood sample, as well as all chain of custody documentation, would be provided to Cottrell.

Cottrell argues that he was entitled to all the requested material under OCGA § 40-6-392 (a) (4), which provides in pertinent part: "Upon the request of the person who shall submit to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney." We disagree with his argument.

OCGA § 40-6-392 (a) (4) expanded previous discovery procedures which allowed discovery only of written scientific reports, and is consistent with the broad right of cross-examination embodied in OCGA § 24-9-64.[2] "Thus, as a general rule, a defendant now has the right to subpoena memos, notes, graphs, computer printouts, and other data relied upon by a state crime lab chemist in obtaining gas chromatography test results."[3] A request directed to the state is also

---

[1] Cottrell asked the state to produce
all training materials utilized by the officer; all training materials utilized by the Area Supervisor; all training records for the Intox Operator or Gas Chromatography (GCMS) in question; all training records for the Area Supervisor in question; copies of any studies, journal articles or other learned treatises relied upon by any experts called by the state on the Intox 5000 or GCMS or utilized or referenced in training manuals utilized by operators or area supervisors; all logs or other records maintain[ed] for the Intox 5000 or GCMS in question for the past two years; all maintenance logs for the Intox 5000 or GCMS for the last 2 years; all calibration records and test results for the last two years; the owner's manual or operator's instructions for the Intox 5000 or GCMS in question provided by CMI, Inc. or other applicable manufacturer, any and all software information including source code, software version on the arrest date, date of software version installation, date this version of the software was tested and approved by the Georgia Department of Forensic Services of the Georgia Bureau of Investigation; and all maintenance, calibration, and test results stored in the software memory of the Intox 5000 or GCMS as of the date of this motion. All test results and data utilized to produce the Official Report of the Division of Forensic Services of the Georgia Bureau of Investigation.
Cottrell requested some additional material during the course of the motion hearing.

[2] *Price v. State*, 269 Ga. 222, 224 (2) (498 SE2d 262) (1998).

[3] (Citation omitted.) *Townsend v. State*, 236 Ga. App. 530, 532-533 (3) (511 SE2d 587) (1999).

sufficient to require production of the information.[4] We review the trial court's ruling for abuse of discretion.[5]

Here, the state agreed to provide Cottrell with any notes, memos, graphs, computer printouts or other specific data related to the actual blood test, and Cottrell does not contend that the information was not subsequently provided. Cottrell nevertheless claims that full information concerning the test or tests included all the information that he requested. In particular, he argues that the presence of interferents which prevented a result on the Intoxilyzer 5000 breath test could have also affected the accuracy of the blood test, and that the additional requested information, whether it be manuals, calibrations, or test samples, were necessary to show that the blood test results were inaccurate. Pretermitting whether "full information" for purposes of OCGA § 40-6-392 (a) (4) extends beyond the memos, notes, graphs, computer printouts, and other data relied upon the chemist in performing the test, the requested information must at least be shown by the defendant to be relevant in order to be discoverable.[6] This, Cottrell failed to do.

David Golz, the toxicologist who performed the blood test, testified at the motion hearing that to the best of his knowledge no compound could be confused for ethyl alcohol by the blood gas chromatogram. Golz was also unable to confirm that any interferent detected on the Intoxilyzer 5000 could also have an effect on a blood test using a gas chromatograph machine. Thus, Cottrell did not demonstrate any relationship between the interferents detected by the Intoxilyzer 5000 and the blood test. Cottrell was not entitled to discovery of material beyond the data relied on by the crime laboratory chemist to pursue a "fishing expedition" to establish such a relationship.[7] Under the circumstances, the trial court did not abuse its discretion in limiting Cottrell's request for full information to the material conceded by the state to be discoverable.

2. Cottrell also contends that the trial court erred in failing to suppress the blood test results because one of the two tests of his blood was performed by a laboratory technician who was not made available for cross-examination at trial. Golz, however, testified at trial that he operated the instrument during both tests. According to Golz,

---

[4] *Birdsall v. State*, 254 Ga. App. 555, 558 (562 SE2d 841) (2002).

[5] See *Townsend*, 236 Ga. App. at 533 (3).

[6] See, e.g., *Bazemore v. State*, 244 Ga. App. 460 (1) (535 SE2d 830) (2000) (party serving subpoena has initial burden of showing that documents sought are relevant).

[7] See *Eason v. State*, 260 Ga. App. 445, 447, n. 2 (396 SE2d 492) (1990), overruled in part, *State v. Lucious*, 271 Ga. 361, 365 (4) (b) (518 SE2d 677) (1999); *Bazemore v. State*, 233 Ga. App. 892, 893 (2) (506 SE2d 177) (1998) (defendant not entitled to unlimited access to chemist's work product or to embark on unlimited fishing expedition as part of document subpoena).

the technician assisted him in the second test and sampled the blood the previous day. Cottrell subsequently objected to the admission of the blood test results solely on the ground that without the technician's testimony the state could not lay a foundation for the chain of custody of his blood.

Relying on the Supreme Court's decision in *Crawford v. Washington*,[8] Cottrell contends on appeal that the technician's absence at trial denied him his constitutional right to confront the witnesses against him. But by failing to make this objection at trial Cottrell has waived the issue.[9]

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED AUGUST 1, 2007 — 

*George C. Creal, Jr.*, for appellant.

*Leslie Miller-Terry, Solicitor-General, Maurice Brown, Keith E. Gammage, Assistant Solicitors-General*, for appellee.

---

[8] 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

[9] See *Walton v. State*, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004) (appellant's failure to object to the introduction of evidence on grounds that it violated the Sixth Amendment right to confrontation precluded consideration of the issue on appeal).