296 Ga. 586
FINAL COPY

S14G1005.  PARKER v. THE STATE.

NAHMIAS, Justice.

We granted certiorari in this case to decide whether, under Georgia's new Evidence Code, hearsay evidence is admissible in determining whether an out-of-state person is a material witness to a Georgia criminal proceeding under our State's Uniform Act to Secure the Attendance of Witnesses from Without the State, OCGA § 24-13-90 et seq. (the "out-of-state witness act").[1]  As explained below, we hold that a proceeding on a motion for issuance of a material witness certificate is a fact-finding proceeding to which the new evidence rules apply under OCGA § 24-1-2 (b), unless an exception applies — but an exception does apply.  Under OCGA § 24-1-2 (c) (1), the hearsay and other rules of evidence, aside from privileges, do not apply to "[t]he determination of questions of fact

---

[1] Georgia's out-of-state witness act, which was originally enacted in 1976, see Ga. L. 1976, p. 1366, § 1, actually combined into one statute the major provisions of two separate uniform acts promulgated by the National Conference of Commissioners on Uniform State Laws:  the 1936 Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (a version of which has now been adopted by all 50 states and the District of Columbia), and the 1957 Uniform Rendition of Prisoners as Witnesses in Criminal Proceedings Act (which the National Conference withdrew from recommendation for enactment in 1984 on the ground that it had become obsolete).

preliminary to admissibility of evidence when the issue is to be determined by the court under Code Section 24-1-104." And determining whether a particular out-of-state person can offer testimony that is material to the particular Georgia criminal proceeding involves "[p]reliminary questions concerning the qualification of [the] person to be a witness" in the case under OCGA § 24-1-104 (a).

The trial court therefore erred in applying the hearsay rules to exclude appellant Jason Parker's proffered documents from the evidence the court considered in ruling on his motion for material witness certificates, and the Court of Appeals erred in Division 1 of its opinion in affirming the trial court's order denying Parker's motion. See Parker v. State, 326 Ga. App. 217, 218-219 (756 SE2d 300) (2014). Accordingly, we reverse the Court of Appeals' judgment in part and remand the case for further proceedings consistent with this opinion.

1. The parties have stipulated to the following facts. On April 5, 2012, at about 9:28 p.m., a Georgia State Patrol trooper conducted a traffic stop of Parker, who was driving his SUV at 72 miles per hour on Route 10 in Wilkes County where the posted speed limit was 55 mph. The trooper detected a

moderate odor of alcohol coming from inside the SUV and smelled a faint odor of alcohol on Parker's breath. Parker initially denied drinking but later admitted that he had consumed alcohol earlier that day. After administering field sobriety tests, which Parker failed, the trooper arrested Parker for driving under the influence ("DUI"). The trooper then read Parker the implied consent warnings, and he agreed to submit to breath tests to determine his alcohol concentration. The trooper transported Parker to the local sheriff's office, where he was tested on a properly functioning Intoxilyzer 5000 machine that produced readings of 0.158 and 0.157 and generated a printout card documenting those results.

On August 16, 2012, the State filed an accusation charging Parker with driving with an alcohol concentration of .08 grams or more ("DUI per se"), driving while under the influence of alcohol to the extent that it was less safe for him to drive ("DUI less safe"), and speeding. On December 10, 2012, Parker filed a motion under the out-of-state witness act asking the trial court to issue material witness certificates — the first step in the two-step process for compelling an out-of-state witness to testify or otherwise provide evidence in

a criminal proceeding in Georgia.[2] The motion sought certificates designating

CMI, Inc., the Kentucky-based manufacturer of the Intoxilyzer 5000, and five

named agents or employees of CMI as material witnesses, in order to secure

their appearance in Georgia with the source code for the machine.[3] Parker noted

that the Intoxilyzer 5000 printout card showing the results of his breath tests was

sufficient evidence to convict him of DUI per se and argued that he was unable

to challenge the reliability and accuracy of these results without access to the

---

[2] OCGA § 24-13-94 (a) says:
> If a person in any [other] state . . . is a material witness in a prosecution pending in a court of record in this state or in a grand jury investigation which has commenced or is about to commence a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. The certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

If the Georgia court issues the material witness certificate, it is presented to a court in the state where the witness is located, and that court must determine whether the witness is both material and necessary to the Georgia criminal proceeding, among other things. See Davenport v. State, 289 Ga. 399, 401-404 (711 SE2d 699) (2011). See also footnote 4 below.

[3] We have held that "an out-of-state corporation may be 'a person' that is a material witness under the Uniform Act and may be determined to be in possession of material evidence." Yeary v. State, 289 Ga. 394, 396 (711 SE2d 694) (2011). We also have held that material witnesses may be required to bring items or documents with them. See id. at 395. "The 'source code' consists of human-readable programming instructions that play a role in controlling the internal calibration of the Intoxilyzer 5000 machine." Cronkite v. State, 293 Ga. 476, 477, n. 2 (745 SE2d 591) (2013). See also Microsoft Corp. v. AT&T Corp., 550 U. S. 437, 448, n. 8 (127 SCt 1746, 167 LE2d 737) (2007) ("'Software in the form in which it is written and understood by humans is called "source code." To be functional, however, software must be converted (or "compiled") into its machine-usable version,' a sequence of binary number instructions [called] 'object code.'" (citations omitted)).

4

machine's source code.

Georgia's new Evidence Code took effect on January 1, 2013. See Ga. L. 2011, p. 99, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date."). Although not statutorily required to do so, the trial court elected to hold an evidentiary hearing on Parker's motion on February 6, 2013.[4] Parker called no witnesses, proffering only documents for the court to consider in deciding whether to issue the material witness certificates. The State did not object when Parker proffered the Intoxilyzer 5000 printout card with the results of his breath

---

[4] OCGA § 24-13-94 makes no mention of a hearing. By contrast, when a Georgia court is the "receiving" court presented with a material witness certificate from another state, OCGA § 24-13-92 (a) requires the Georgia court to hold a hearing. The court must either enter an order notifying the witness of the time and place of the hearing and directing him to appear, see OCGA § 24-13-94 (a), or, "in lieu of notification of the hearing, direct that the witness be forthwith brought before [the court] for the hearing" if the certificate recommends that the witness be taken into immediate custody, OCGA § 24-13-94 (c). At the hearing, the court must determine whether the witness is "material and necessary," whether "it will . . . cause undue hardship to the witness to be compelled to attend and testify" in the out-of-state proceeding, and whether the requesting state's laws "will give to such witness protection from arrest and the service of civil and criminal process." OCGA § 24-13-92 (b). "In any such hearing, the certificate shall be prima-facie evidence of all the facts stated therein," § 24-13-92 (b), and a certificate's recommendation of custody shall be "prima-facie proof" of the desirability of taking the witness into immediate custody and delivering him to an officer of the requesting state to assure his attendance at the out-of-state proceeding, OCGA § 24-13-92 (c). If the court determines that the requirements are satisfied, it "shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify" in the out-of-state proceeding, OCGA § 24-13-92 (b), or, "in lieu of issuing a subpoena or summons, order that the witness be forthwith taken into custody and delivered to an officer of the requesting state," OCGA § 24-13-92 (c).

5

tests. The State objected on the ground of hearsay, however, when Parker proffered a transcript of testimony that his expert witness on computer source code, Thomas E. Workman, Jr., had given in another case, two affidavits from Workman that were submitted in other cases, and two published articles and a report from the National Safety Council concerning the Intoxilyzer 5000 and breath alcohol testing in general. In response to the objection, Parker argued that the new rules of evidence, including the hearsay rules, do not apply to hearings on a motion for a material witness certificate. The court allowed the proffered documents to be entered into the record but reserved a ruling on the hearsay objection. On February 14, 2013, the court entered an order sustaining the State's hearsay objection and therefore denying Parker's motion for failure to prove the materiality of the witnesses requested.

On May 22, 2013, the trial court held a bench trial on stipulated facts, which included a stipulation that the breath test results were admissible except for Parker's objection based on the denial of his motion for material witness certificates and, in particular, the court's refusal to consider his proffered documents. The court overruled Parker's objection, admitted the breath test results, and found him guilty as charged. The court sentenced Parker to

6

concurrent terms of 12 months in the county jail for DUI per se and speeding, with the first 72 hours to be served in confinement and the remainder to be served on probation.

Parker then appealed, but the Court of Appeals affirmed his convictions. See Parker, 326 Ga. App. at 220. Division 1 of its opinion held that a hearing under the out-of-state witness act is a "fact-finding proceeding" within the meaning of OCGA § 24-1-2 (b) to which the rules of evidence, including the hearsay rules, apply. Parker, 326 Ga. App. at 219. And because Parker presented only hearsay evidence as to materiality during the hearing on his motion, the Court of Appeals affirmed the trial court's order denying Parker's motion for material witness certificates. See id.

We granted Parker's petition for certiorari to review this evidentiary issue.[5]

---

[5] In Division 2 of its opinion, the Court of Appeals declined to address Parker's arguments that the State itself was required to provide him with the source code or that CMI's actions should be imputed to the State under the "public function test," because he failed to show record support for his factual contentions that the State owned, possessed, or controlled the source code or that CMI had been acting as an arm of law enforcement. See Parker, 326 Ga. App. at 219-220. Parker also sought review of those rulings, but our order granting certiorari did not ask the parties to address them, and the parties did not do so in their briefs.

2. (a) OCGA § 24-1-2 governs the applicability of the new Evidence Code to proceedings in Georgia courts after the new Code's effective date of January 1, 2013. Subsection (a) says that the rules of evidence shall apply in all jury trials, and subsection (b) says that the rules "shall apply generally to all nonjury trials and other fact-finding proceedings . . . subject to the limitations set forth in subsections (c) and (d)." Subsection (c) then lists eight situations where "[t]he rules of evidence, except those with respect to privileges, shall not apply," and subsection (d) lists four additional situations where the rules do not or may not apply fully.[6]

---

[6] OCGA § 24-1-2 says in full:
> (a) The rules of evidence shall apply in all trials by jury in any court in this state.
> (b) The rules of evidence shall apply generally to all nonjury trials and other fact-finding proceedings of any court in this state subject to the limitations set forth in subsections (c) and (d) of this Code section.
> (c) The rules of evidence, except those with respect to privileges, shall not apply in the following situations:
> > (1) The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Code Section 24-1-104;
> > (2) Criminal proceedings before grand juries;
> > (3) Proceedings for extradition or rendition;
> > (4) Proceedings for revoking parole;
> > (5) Proceedings for the issuance of warrants for arrest and search warrants except as provided by subsection (b) of Code Section 17-4-40;
> > (6) Proceedings with respect to release on bond;
> > (7) Dispositional hearings and custody hearings in juvenile court; or
> > (8) Contempt proceedings in which the court, pursuant to subsection (a) of Code Section 15-1-4, may act summarily.

8

(b)     The Court of Appeals held that the trial court's determination of a requested witness's materiality under the out-of-state witness act was a "fact-finding proceeding[ ]" within the meaning of OCGA § 24-1-2 (b).  We agree.

A party's ability to obtain a material witness certificate turns on the court's finding of certain facts.  OCGA § 24-13-94 (a) requires a Georgia court asked to issue a material witness certificate to determine whether the person sought "is a material witness in a prosecution pending in a court of record in this state or in a grand jury investigation which has commenced or is about to commence."[7]  The finding of materiality requires a determination of whether the

---

(d) (1)  In criminal commitment or preliminary hearings in any court, the rules of evidence shall apply except that hearsay shall be admissible.
(2) In in rem forfeiture proceedings, the rules of evidence shall apply except  that hearsay shall be admissible in determining probable cause or reasonable cause.
(3) In presentence hearings, the rules of evidence shall apply except that hearsay and  character evidence shall be admissible.
(4) In administrative hearings, the rules of evidence as applied in the trial of nonjury civil actions shall be followed, subject to special statutory rules or agency rules as authorized by law.
(e) Except as modified by statute, the common law as expounded by Georgia courts shall continue to be applied to the admission and exclusion of evidence and to procedures at trial.

[7]  The court also must determine whether the person sought is in a "state which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or grand jury investigations commenced or about to commence in this state."  OCGA § 24-13-94 (a).  As mentioned in footnote 1 above, all 50 states and the District of Columbia have now adopted a version of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.

9

witness "'can testify about matters having some logical connection with the consequential facts'" of the case at hand, <u>Davenport v. State</u>, 289 Ga. 399, 404 (711 SE2d 699) (2011) (citation omitted), which we have explained requires findings about the particular facts of the witness and the case. See <u>Cronkite v. State</u>, 293 Ga. 476, 477-478 (745 SE2d 591) (2013).[8]

Accordingly, under OCGA § 24-1-2 (b), the rules of evidence apply to a proceeding for issuance of a material witness certificate under the out-of-state witness act *unless* one of the exceptions in OCGA § 24-1-2 (c) or (d) applies. We turn next to that question, which the Court of Appeals' opinion did not address.

3.    Parker points us to two of the exceptions in OCGA § 24-1-2 (c) that he says exempt a proceeding for a material witness certificate from the rules of evidence and, in particular, from the hearsay rules.

(a)    First, Parker invokes OCGA § 24-1-2 (c) (3), under which the rules of evidence, other than privileges, do not apply to "[p]roceedings for extradition or rendition." Parker acknowledges that a proceeding for a material witness

---

[8] A Georgia court that receives a material witness certificate from another state must hold a hearing and make materiality, necessity, and other findings with factual components. See footnote 4 above.

10

certificate under the out-of-state witness act is not *actually* a proceeding for extradition or rendition, as material witness proceedings seek the production of witnesses to crimes, not the alleged criminals. See Black's Law Dictionary (9th ed. 2009) (defining "extradition" as "[t]he official surrender of an alleged criminal by one state or nation to another having jurisdiction over the crime charged; the return of a fugitive from justice, regardless of consent, by the authorities where the fugitive is found," and defining "rendition" in this context as "[t]he return of a fugitive from one state to the state where the fugitive is accused or was convicted of a crime"). Nevertheless, Parker contends that it is enough that proceedings under the out-of-state witness act "closely resemble" extradition or rendition proceedings. Under Georgia's new Evidence Code, however, resemblance to one of the enumerated situations in which the evidence rules do not fully apply is *not* enough.

Our new Evidence Code was based in large part on the Federal Rules of Evidence. See Paul S. Milich, Georgia Rules of Evidence § 1:2, at 5 (2014-2015 ed.) (hereinafter "Milich"). And where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have

interpreted those rules for guidance. Thus, the uncodified first section of the

statute enacting the new Evidence Code explains:

> It is the intent of the General Assembly in enacting this Act to adopt the Federal Rules of Evidence, as interpreted by the Supreme Court of the United States and the United States circuit courts of appeal as of January 1, 2013, to the extent that such interpretation is consistent with the Constitution of Georgia. Where conflicts were found to exist among the decisions of the various circuit courts of appeal interpreting the federal rules of evidence, the General Assembly considered the decisions of the 11th Circuit Court of Appeals. It is the intent of the General Assembly to revise, modernize, and reenact the general laws of this state relating to evidence while adopting, in large measure, the Federal Rules of Evidence.

See Ga. L. 2011, p. 99, § 1.[9] Where a provision of the new Evidence Code

*differs* in substance from the counterpart federal rule, as interpreted by federal

courts, we must correspondingly presume that the General Assembly meant the

---

[9] See also <u>Allen v. State</u>, 286 Ga. 392, 395 (687 SE2d 799) (2010) ("Because the language of OCGA § 24-9-84.1 (b) mirrors that of Rule 609 (b) of the Federal Rules of Evidence and the statutes based on Rule 609 (b) that have been enacted by several other states, we look for guidance to the judicial decisions of the federal courts construing Rule 609 (b) and the courts of our sister states construing their statutes modeled on Rule 609 (b)."); <u>Mason v. Home Depot U.S.A., Inc.</u>, 283 Ga. 271, 279 (658 SE2d 603) (2008) ("[I]t is proper to consider and give weight to constructions placed on the federal rules by federal courts when applying or construing a statute based on those rules."); <u>Flading v. State</u>, 327 Ga. App. 346, 351-352 (759 SE2d 67) (2014) (looking to the Federal Rules of Evidence and Eleventh Circuit case law in interpreting provisions of our new Evidence Code).

12

Georgia provision to be different.[10]

Applying these interpretive principles here, we first recognize that OCGA § 24-1-2's counterpart in the federal rules is Federal Rule of Evidence 1101.[11]

---

[10] The new Evidence Code was signed into law on May 3, 2011, with an effective date of January 1, 2013. See Ga. L. 2011, p. 99, § 1. In December 2011, the Federal Rules of Evidence were amended throughout as part of a general restyling of the federal court rules designed to make them easier to understand through the use of consistent style and terminology. See Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence xxxiii (2d ed. 2014) (hereinafter "Carlson & Carlson"). The December 2011 amendments to the Federal Rules of Evidence were intended to be stylistic only, with no intent to change the result in any ruling on the admissibility of evidence. See id. at xxxiii. Thus, not every discrepancy between the wording of the new Evidence Code and the version of the Federal Rules of Evidence that was in effect on January 1, 2013, signifies a difference in meaning.

[11] As it did on January 1, 2013, Federal Rule of Evidence 1101 now says in full:

(a)    **To Courts and Judges.** These rules apply to proceedings before:
  • United States district courts;
  • United States bankruptcy and magistrate judges;
  • United States courts of appeals;
  • the United States Court of Federal Claims; and
  • the district courts of Guam, the Virgin Islands, and the Northern Mariana Islands.

(b)    **To Cases and Proceedings.** These rules apply in:
  • civil cases and proceedings, including bankruptcy, admiralty, and maritime cases;
  • criminal cases and proceedings; and
  • contempt proceedings, except those in which the court may act summarily.

(c)    **Rules on Privilege.** The rules on privilege apply to all stages of a case or proceeding.

(d)    **Exceptions.** These rules – except for those on privilege – do not apply to the following:
  (1)    the court's determination, under Rule 104 (a), on a preliminary question of fact governing admissibility;
  (2)    grand-jury proceedings; and
  (3)    miscellaneous proceedings such as:
    • extradition or rendition;
    • issuing an arrest warrant, criminal summons, or search warrant;
    • a preliminary examination in a criminal case;

13

The two provisions are similar in most respects, making the rules of evidence generally applicable to most court proceedings. See OCGA § 24-1-2 (a), (b); Fed. R. Evid. 1101 (a), (b). Both the Georgia and federal provisions then provide for exceptions, and most of the specified exceptions in the two rules overlap. But there is a significant difference in how the exceptions are introduced. The third exception set forth in the federal rule is for "miscellaneous proceedings *such as*" the six types of proceedings that are then listed. Fed. R. Evid. 1101 (d) (3) (emphasis added). Thus, the federal rule expressly authorizes federal courts to limit the application of the rules of evidence in situations that resemble the situations specified in the rule.

OCGA § 24-1-2 does not have a similar catch-all exception for "miscellaneous proceedings such as" followed by a list of illustrative examples. Instead, the Georgia statute enumerates in subsections (c) and (d) twelve situations, and only twelve, where the rules of evidence have limited application.

---

• sentencing;
• granting or revoking probation or supervised release; and
• considering whether to release on bail or otherwise.

(e) **Other Statutes and Rules.** A federal statute or a rule prescribed by the Supreme Court may provide for admitting or excluding evidence independently from these rules.

14

The comprehensive and mandatory language of OCGA § 24-1-2 (a) and (b), coupled with the absence in OCGA § 24-1-2 (c) or (d) of a "miscellaneous proceedings such as" exception like the one found in the corresponding federal rule, indicates that the twelve statutorily enumerated exceptions constitute an exclusive list.

Leading commentators on the new Evidence Code agree with this conclusion and suggest why the Georgia provision differs from the federal model in this respect. Professors Ronald and Michael Carlson explain that the new Georgia Code was written to prevent courts from creating patchwork exceptions to the applicability of the rules of evidence, which had been a criticism of the old code.

> Previous Georgia statutory law provided a broad and general statement of when the evidence rules applied. Particular proceedings were left to case-by-case development and the gaps were filled in by sometimes inconsistent case law. OCGA [§] 24-1-2 establishes a much clearer definition for applicability of the evidence rules because, unlike the former rule, it provides far more particulars in terms of where Georgia's new evidence rules will and will not apply.

Carlson & Carlson, supra, at 7. See also Milich, supra, § 1:2, at 5 ("If a specific hearing is not addressed in subsections (c) or (d), then the rules of evidence

15

apply to that hearing pursuant to new O.C.G.A. § 24-1-2 (b).").

In sum, under our new Evidence Code, unless a fact-finding proceeding involves one of the twelve situations enumerated in OCGA § 24-1-2 (c) and (d), the rules of evidence fully apply; similarity to one or more of the enumerated situations is insufficient to limit the applicability of the evidence rules. Accordingly, Parker's reliance on OCGA § 24-1-2 (c) (3) is misplaced.

(b)  Parker also relies, however, on OCGA § 24-1-2 (c) (1), which says that the rules of evidence, other than privileges, shall not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Code Section 24-1-104." OCGA § 24-1-104 elaborates on what OCGA § 24-1-2 (c) (1) calls "questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court" as follows:

> Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (b) of this Code section. . . .

OCGA § 24-1-104 (a).  The rule then reiterates what is said in OCGA § 24-1-2 (c) (1): "In making its determination, the court shall not be bound by the rules

16

of evidence except those with respect to privileges."[12]

As discussed above, obtaining production of a material witness under the out-of-state witness act requires proof of various facts pertaining to the particular witness and case. The party seeking a material witness certificate must show that the person sought is a "material witness" in the underlying criminal proceeding, OCGA § 24-13-94 (a), meaning that the person is capable of "'testify[ing] about matters having some logical connection with the consequential facts'" of the case, Davenport, 289 Ga. at 404. And if a certificate

---

[12] OCGA § 24-1-104 says in full:

> (a) Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (b) of this Code section. In making its determination, the court shall not be bound by the rules of evidence except those with respect to privileges. Preliminary questions shall be resolved by a preponderance of the evidence standard.
>
> (b) When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.
>
> (c) Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be conducted out of the hearing of the jury when the interests of justice require or when an accused is a witness and requests a hearing outside the presence of the jury.
>
> (d) The accused shall not, by testifying upon a preliminary matter, become subject to cross-examination as to other issues in the proceeding.
>
> (e) This Code section shall not limit the right of a party to introduce before the jury evidence relevant to weight or credibility.

We note that OCGA § 24-1-2 (c) (1)'s exception to the applicability of the rules of evidence corresponds to the exception in Federal Rule of Evidence 1101 (d) (1), and OCGA § 24-1-104 (a) mirrors in relevant part Federal Rule of Evidence 104 (a).

17

is issued, the party must show the court in the receiving state that the witness is "material and necessary," among other things, OCGA § 24-13-92 (b). These are "[p]reliminary questions concerning the qualification of a person to be a witness" within the meaning of OCGA § 24-1-104 (a). See also OCGA § 24-6-602 (to be competent to testify to a matter, a lay witness must have "personal knowledge of the matter"). And OCGA §§ 24-1-2 (c) (1) and 24-1-104 (a) both state clearly that in this situation, the rules of evidence, other than privileges, do not apply; the inapplicable rules include the hearsay rules.

This conclusion is bolstered by the recognition that OCGA § 24-13-94 permits a court to decide a motion to issue a material witness certificate without holding an evidentiary hearing, see footnote 4 above, although the court still must find certain facts to make the decision; when no hearing is held at which live testimony can be given, the evidence the court considers in making its decision will often be hearsay. See OCGA § 24-8-801 (c) ("'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). It is also worth noting that this conclusion appears to conform with traditional practice in Georgia and other states in allowing the use of hearsay evidence in out-of-

18

state witness proceedings. See, e.g., <u>Wollesen v. State</u>, 242 Ga. App. 317, 318-321 (529 SE2d 630) (2000); <u>In re California Grand Jury Investigation</u>, 471 A2d 1141, 1143-1145 (Md. Ct. Spec. App. 1984).

4.  For these reasons, the trial court erred in sustaining the State's hearsay objection to the evidence that Parker proffered in support of his motion for material witness certificates, and then in denying his motion for lack of evidence. Likewise, the Court of Appeals erred in Division 1 of its opinion in upholding the trial court's evidentiary ruling and affirming the denial of the material witness certificates on the ground that Parker "presented no admissible evidence during the hearing on his motion." <u>Parker</u>, 326 Ga. App. at 219. Instead, the Court of Appeals should have vacated Parker's convictions and the order denying his motion for material witness certificates, reversed the trial court's exclusion of Parker's proffered documents, and remanded the case to the trial court with direction to issue a new order on Parker's motion after considering his proffers, along with any other unprivileged evidence submitted by Parker and the State on remand.[13]

_____

[13] In this respect, we note that when the trial court indicated at the end of the hearing that it would take Parker's motion under advisement, the State asked, "if the Court were to make a finding that it's going to admit the proffer, would the State have the opportunity to come back and

19

The trial court should give the evidence presented "such weight as [the court's] judgment and experience counsel." United States v. Matlock, 415 U. S. 164, 175 (94 SCt 988, 39 LE2d 242) (1974). "[C]ertainly there should be no automatic rule against the reception of hearsay evidence in such proceedings [where the judge alone is considering the admissibility of evidence]." Id. (applying Federal Rules of Evidence 104 (a) and 1101 (d) (1)). However, the trial court retains the prerogative as the fact-finder to determine the weight and credibility of the evidence submitted, and in making this determination, the court may consider the fact that evidence was presented in the form of hearsay rather than testimony subject to cross-examination or evidence bearing other indications of trustworthiness. See Milich, supra, § 1:7, at 7 (explaining that while hearsay statements should be considered by the court in determining preliminary questions under OCGA § 24-1-104 (a), the court "must decide whether their hearsay character so reduces their reliability that the facts are not proven by a preponderance of the evidence. In other words, the hearsay character of the evidence goes to weight, not admissibility."); John Bourdeau et

_____

rebut what's allegedly in the proffer?" The court said yes.

al., 12 Fed. Proc., L. Ed. § 33:36 (2010 ed.) (explaining that Federal Rule of Evidence 104 (a) recognizes "the ability of the court to receive all relevant evidence and to discount evidence that is inherently untrustworthy or suspicious," and that "even though the court may consider evidence which would normally be excluded at trial, the court still has a duty to weigh the evidence and discount that which is less reliable").

If the trial court on remand grants Parker's motion for material witness certificates in whole or in part, and Parker then succeeds in obtaining summonses for the witnesses from the Kentucky court, then a new trial will be necessary. If, on the other hand, the trial court denies the motion again, then the court should reenter the judgments of conviction against Parker, who could then take another appeal challenging the second ruling on his motion and any related issues.[14]  Cf. Moore v. State, 290 Ga. 805, 809-810 (725 SE2d 290) (2012) (vacating the defendant's conviction and remanding the case to the trial court with direction to hold a similar transaction hearing and then either to enter the findings required to admit the evidence or, if the evidence was inadmissible, to

---

[14]  The Court of Appeals' rulings on which certiorari was not granted would be the law of the case.

order a new trial).

Judgment reversed in part, and case remanded with direction. All the Justices concur.

Decided February 16, 2015.

Certiorari to the Court of Appeals of Georgia – 326 Ga. App. 217.

Head, Thomas, Webb & Willis, Gregory A. Willis, for appellant.

Dennis C. Sanders, District Attorney, William P. Doupe', Assistant District Attorney, for appellee.